# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1999-KA-00992-COA

**MAURICE BISHOP**                                                      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/03/1998 |
| TRIAL JUDGE: | HON. JOHN L. HATCHER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RAYMOND L. WONG |
| | WILLIAM KETHLEY DOSSETT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  W. GLENN WATTS |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | 11/03/1998: UTTERING FORGERY: SENTENCED TO 15 YEARS IN THE MDOC AND 15 YEARS SHALL NOT BE REDUCED OR SUSPENDED NOR SHALL THE DEFENDANT BE ELIGIBLE FOR PAROLE OR PROBATION DURING THE TERM OF SAID SENTENCE. |
| DISPOSITION: | AFFIRMED - 11/07/00 |
| MOTION FOR REHEARING FILED: | |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | 11/28/2000 |

BEFORE SOUTHWICK, P.J., IRVING, AND PAYNE, JJ.

IRVING, J., FOR THE COURT:

¶1. Maurice Bishop was convicted of uttering a forgery. Aggrieved, Bishop has filed this appeal in which he contends (1) that the trial court committed reversible error in admitting an uttering a forgery conviction that was more than ten years old, (2) that the trial court erred in failing to give *sua sponte* a limiting instruction regarding convictions used for impeachment only, (3) that the trial court erred in limiting the cross-examination of a witness, (4) that the cumulative effect of errors one through three warrant reversal, and (5) that the trial court erred in not granting a directed verdict since the verdict is against the overwhelming weight of the evidence, evidenced by bias and prejudice and based solely on suspicion and speculation.

## FACTS

¶2. Idella Taylor testified that she received a check from Progressive Gulf, her auto insurance company. The

check was in the amount of $1,283 and made out to "Idella Taylor and Tag's Body Shop." Upon receipt of the check, Taylor placed it on a file cabinet that she used as a night stand in her bedroom. She discovered the check missing around August 17. After discovering the check missing, she stated she called the insurance company and was told that the check had already been cashed. She obtained a copy of the cancelled check from the insurance company. The back of the check showed the following endorsement information: Idella Taylor, 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, Bossie Johnson - - Tags and Maurice Bishop 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.

¶3. Taylor took the copy of the canceled check to Tag's auto body shop and spoke with the owner. Based upon information received at Tag's, she went to Speedy Check and learned that the check had been cashed there. According to Mary Kirk, manager of Speedy Check, Speedy Check, at the time the check was cashed, obtained and made a copy of the social security card of the person cashing the check. The social security card was for Maurice Bishop, 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.

¶4. Taylor testified that she met Bishop on August 16 and that he visited her home on that date. She stated Bishop knew she had the check. During his visit, the check was lying on the file cabinet in her room.

¶5. Both Taylor and Bosey Johnson (misspelled "Bossie" on the back of the cancelled check) testified that they did not sign the check or authorize anyone else to sign their names to the check. Mary Kirk identified Bishop as the person who cashed the check. She stated that Speedy Check repossessed his car for defaulting on a $600 loan and that he used the check to pay off the loan. She stated that before cashing the check she heard one end of a phone conversation between Bishop and one whom she assumed to be Taylor. She stated that it sounded as if they were discussing authorization to cash the check.

¶6. Bishop, his mother and brother testified on Bishop's behalf. Bishop's mother and brother stated that they had seen Taylor with Bishop several times. Bishop's mother stated that Taylor gave Bishop a photo with Taylor in it, and Taylor admitted to giving Bishop the photo. Bishop testified that he did not cash the check. He stated that he was at work at the time the check was allegedly cashed. Bishop also testified that he met Taylor in a club and that they developed a relationship. During the course of the relationship, she gave him gifts. According to Bishop, one night he told Taylor he needed $600 to pay off the loan on his car, and she said she would help. He stated that Taylor later told him she had paid the loan for him. Other facts will be developed as warranted during the discussion of the issues.

## ANALYSIS OF THE ISSUES PRESENTED

### I. Aged uttering a forgery conviction

¶7. Bishop argues that the State was allowed, for impeachment purposes, to utilize an uttering a forgery conviction against him which was more than ten years old but that the State should not have been permitted to do so because the prerequisites of M.R.E. 609 were not met. Specifically, Bishop contends the State failed to give the required notice of its intention to use the dated uttering a forgery conviction and that the trial court abused its discretion in admitting the conviction for this reason and the additional reason that the M.R.E. 403 balancing analysis should have made the conviction inadmissible.

¶8. Bishop had five previous convictions which included three misdemeanor false pretenses convictions, one felony embezzlement conviction, and one 1981 felony conviction of uttering a forgery. The three false pretenses convictions and the embezzlement conviction were less than ten years old. Bishop admits to receiving copies of the prior convictions prior to trial.

¶9. At trial, all five of the prior convictions were admitted under M.R.E. 609 (a)(2) as crimes involving dishonesty. Bishop argued at trial that copies of the convictions were given to him during discovery for a previous, unrelated trial and that he should have been given notice of the convictions for this trial. The trial judge ruled that the notice requirement was satisfied as to the 1981 conviction because Bishop was aware of the existence of the conviction and had been orally advised by the prosecution of the prosecution's intention to use it.

¶10. Rule 609 (b) of Mississippi Rules of Evidence requires that prior convictions of ten years or more are not admissible unless written notice of the intent to use such evidence is provided to the adverse party. *See Johnson v. State*, 529 So. 2d 577 (Miss. 1988). The State did not comply with the technical requirements of the rule with respect to notice; therefore, it was error for the trial court to admit the 1981 uttering a forgery conviction. Since the felony embezzlement conviction was less than ten years old, the State was not required to give written notice of intent to use it, and it is clearly admissible under M.R.E. 609 (a)(2) without the necessity for a balancing analysis because it is a crime involving dishonesty. Likewise, the three misdemeanor convictions for false pretense are clearly admissible under M.R.E. 609 (a)(2).

¶11. The trial judge did the M.R.E. 609(b) balancing analysis regarding the 1981 conviction and concluded that the probative value outweighed the prejudicial effect. The trial court stated that the credibility of the witnesses became an issue because Bishop persistently called all the State's witnesses liars. The trial judge was of the opinion that it was important for the jury to have the information about Bishop's prior convictions to aid them in making a determination as to whom to believe. In *Peterson v. State*, 518 So. 2d 632, 637 (Miss. 1987), the Mississippi Supreme Court outlined five factors for the trial judge to consider as a part of the M.R.E. 609 balancing analysis: (1) the impeachment value of the prior crime, (2) the point in time of the conviction and the witness's subsequent history, (3) the similarity between the past crime and the charged crime, (4) the importance of the defendant's testimony, and (5) the centrality of the credibility issue. The trial judge did not discuss all five of the *Peterson* factors as he should have. For reasons discussed later in this opinion, we hold that the admission of the 1981 conviction was harmless; therefore, we pretermit the question of whether the 1981 conviction also should have been excluded under the M.R.E. 609(b) balancing analysis.

### II. The limiting instruction

¶12. Bishop, citing *Robinson v. State,* 735 So. 2d 208 (¶¶9-10) (Miss. 1999), argues that the trial court erred by not granting *sua sponte* a limiting instruction concerning the evidentiary weight to be given his prior convictions. The State, citing *Haddox v. State*, 636 So. 2d 1229, 1240 (Miss. 1994), counters that Bishop did not raise this issue at trial; therefore, we are precluded from reaching the issue on the merits.

¶13. *Robinson* clearly holds that the trial judge has a responsibility to give *sua sponte* a limiting instruction when prior convictions are sought to be admitted under M.R.E. 609(a)(2). However, *Robinson* does not address the question of whether a defendant, who failed to request a limiting instruction during the course of the trial, must bring that matter before the trial judge by way of a post-trial motion in order to complain on appeal. Further, *Robinson* does not discuss whether the failure to grant the limiting instruction may be subject to the harmless error analysis. We know that the defendant in *Robinson* did not request a limiting instruction. However, the opinion is silent as to whether the matter of the failure to instruct was brought to the trial court's attention by way of a post-trial motion.

¶14. Under traditional appellate procedure, any error not first brought to the attention of the trial court is not

preserved for appeal and is thereby waived. *Haddox v. State*, 636 So. 2d at 1240. This construction, however, most often applies to those situations and matters upon which no duty is placed upon the trial judge to act except as requested by the defendant. The *Robinson* court reversed the defendant's conviction for uttering a forgery when the trial court did not give *sua sponte* a limiting instruction regarding four previous forgery convictions.

¶15. While we recognize the clear holding in *Robinson* that it was reversible error for the trial court not to have given *sua sponte* a limiting instruction on the facts of that case, we do not read *Robinson* to pronounce a *per se* reversible error rule when the trial court fails to give *sua sponte* the required limiting instruction, nor do we read *Robinson* to exclude such error from the harmless error analysis. Thus, we look at the facts of our case to determine whether the failure to give the required limiting instruction is harmless error.

¶16. Bishop's sole defense was that he had a relationship with Taylor and that as a result of that relationship, Taylor voluntarily agreed to pay the loan he owed at Speedy Check but that she later became angry with him because she caught him with a woman. Were Taylor the only witness on the issue of the forged check in question, we would be reluctant to hold that admission of his prior convictions, without a limiting instruction, does not constitute reversible error. However, in this case, the forgery involved the forged signatures of both Bosey Johnson and Taylor. Bishop does not claim to have had a relationship with Johnson that soured. Further, Bishop denies going into Speedy Check to pay the loan, but Mary Kirk of Speedy Check testified unequivocally that Bishop did in fact come in with the forged check. She testified that the purported signatures of Taylor and Johnson were already on the back of the check and that Bishop, in her presence, added his name to the back of the check. On this evidence, we are constrained to conclude that the failure of the trial court to give a limiting instruction was without doubt harmless error. In order for the jury to find Bishop not guilty, it would have been required to totally disbelieve not only Taylor but two other very strong neutral witnesses as well.

### III. Limitation on cross-examination

¶17. Bishop argues that trial court erred in limiting his cross-examination of Taylor regarding her medical conditions. Bishop argues that this limitation interfered with his ability to show bias of the key witness against him. Bishop contends that he was not allowed to cross-examine Taylor regarding (1) her bringing an item to his mother, (2) Taylor's mental health, and (3) her arrest for driving under the influence. According to Bishop, he needed to cross-examine Taylor about the item (a chicken or chicken sandwich) she brought to his mother in order to show that he and Taylor had more than a casual relationship. He wanted to attack Taylor's memory and competency by cross-examining her regarding her medication and brief visit to the Mississippi State Hospital at Whitfield. Finally, Bishop says Taylor received a ticket for DUI on the date he allegedly visited her house. Bishop does not allege that Taylor was too intoxicated to be aware of her actions on the day of the visit, but we surmise that is the thrust of his argument.

¶18. A witness on cross-examination may be interrogated regarding his interest, bias or prejudice in a case. *Sayles v. State*, 552 So. 2d 1383, 1385-86 (Miss. 1989). The scope of cross-examination is ordinarily broad; however, it is within the sound discretion of the trial court to limit cross-examination to relevant matters. *Pace v. State*, 473 So. 2d 167, 169 (Miss. 1985). Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Smith v. State*, 733 So. 2d 793, 801 (Miss. 1999).

¶19. Our examination of the record shows that the trial court limited questions to issues that were relevant and had some material connection to Taylor's credibility as a witness. For example, the trial court allowed Bishop to question Taylor about the alleged casual relationship. Taylor denied more than once the existence of a relationship. She admitted, however, calling Bishop's mother, but she denied telling Bishop's mother that Taylor agreed to pay off Bishop's car loan. Taylor admitted giving Bishop one of her pictures. When Taylor was asked if she had brought chicken to Bishop's mother, the prosecutor objected, and the court sustained the objection. Upon protest by Bishop's counsel that he should be allowed some latitude, the trial court relented and allowed further limited examination. However, Bishop's counsel did not return to the line of questioning concerning the chicken.

¶20. Bishop questioned Taylor regarding her admission to the State hospital at Whitfield. She said she had taken an overdose (of drugs) and had been admitted there for observation about three years before the incident in question and that she was not taking any medication except a medication for arthritis. After this information was elicited by Bishop's attorney, the trial court sustained a motion by the State to exclude it and to instruct the jury to disregard it as irrelevant to the proceedings. We agree with the trial judge on this point. We fail to see the relevance of the excluded testimony.

¶21. The trial court also sustained an objection to a question by Bishop's counsel that asked Taylor if she been arrested for DUI on the date that Bishop visited her home. Again, we fail to see the relevance of this information, even if it were true, unless there was evidence that the intoxication impaired Taylor's ability to recall what transpired during Bishop's visit to her home. In this regard, we note that Bishop did not make a proffer. Therefore, we are unable to assess any prejudice that might arguably have occurred by the trial court's refusal to allow the question to be answered.

¶22. The only evidence in the record of Taylor's having received a ticket came from Taylor's testimony and it hardly helps Bishop. In explaining how Bishop may have acquired her social security number in order to include it on the back of the check, Taylor explained that she had gotten a ticket the night before Bishop's visit, and Bishop told her that he could help her with the ticket but needed the information off the ticket. She showed him the ticket, and Bishop recorded the information. The traffic infraction was never identified in the record. However, if this is the ticket that Bishop is alluding to, we fail to see how cross-examination about that ticket is relevant, even if it were for DUI, since that occurred the previous night. This issue lacks merit.

### IV. Cumulative effect of alleged errors

¶23. Bishop argues that even if the above-mentioned errors do not individually require reversal, the combined effect of all the errors warrants reversal. We may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal. *Coleman v. State*, 697 So. 2d 777, 787 (Miss. 1987). However, where there is no reversible error in any part, there is no reversible error to the whole. *Id*. No reversible errors occurred in Bishop's case, so there is no cumulative effect warranting reversal. This argument lacks merit.

### V. Denial of motion for a directed verdict and new trial

¶24. A motion for directed verdict or a JNOV tests the sufficiency of the evidence, and "the trial court must consider all of the evidence . . . in the light most favorable to the State." *May v. State,* 460 So. 2d 778, 781 (Miss. 1984). Credible evidence consistent with guilt must be taken as true. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). The State must be given the benefit of all favorable inferences that may reasonably

be drawn from the evidence. *Gavin v. State*, 473 So. 2d 952, 956 (Miss. 1985). If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the request or motion is required. *Id*. On the other hand, if there is substantial evidence opposed to the request or motion in which reasonable fairminded jurors in the exercise of impartial judgment might reach different conclusions, then the request or motion should be denied. *Id.*

¶25. A motion for a new trial on the basis that the verdict is against the overwhelming weight of the evidence is addressed to the sound discretion of the trial court. *May,* 460 So. 2d at 781. "We will not order a new trial unless convinced that . . . to allow it to stand, would be to sanction an unconscionable injustice." *Id.*

¶26. Bishop argues that there was no sufficient evidence to support the trial court's denial of his directed verdict. Bishop contends that Mary Kirk's testimony regarding Bishop cashing Taylor's check to pay off his loan was uncorroborated and therefore was only probable evidence of guilt rather than evidence of guilt beyond a reasonable doubt. We disagree and find that there was sufficient evidence to support the verdict.

¶27. Kirk's testimony was corroborated by the check, which clearly shows Bishop's name, and a copy of his social security card. Kirk testified that the purported signatures of an "Idella Taylor" and a "Bossie Johnson" were already on the back of the check. Kirk stated that Bishop added his own name to the back of the check in her presence. Taylor corroborated Kirk by stating that she did not have any contact with Speedy Check or Kirk prior to the cashing of the check. Taylor also testified that she had not endorsed the check and had not written her social security number on the back of the check. Taylor stated that she did not authorize Bishop nor anyone else to cash her check. Bosey Johnson, the owner of Tag's Body Shop, also testified that he had never seen the check nor had he signed it or had anything to do with it.

¶28. Even though Bishop contradicted Kirk's testimony by denying that he cashed the check in Kirk's presence, the denial merely created a conflict in the evidence. The jury resolved this conflict against Bishop. The trial court did not err in not granting a new trial and in denying Bishop's motion for directed verdict. This issue lacks merit.

¶29. **THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY OF CONVICTION OF UTTERING FORGERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WHICH SHALL NOT BE REDUCED OR SUSPENDED NOR SHALL THE DEFENDANT BE ELIGIBLE FOR PAROLE OR PROBATION DURING THE TERM OF SAID SENTENCE IS AFFIRMED. SENTENCE TO RUN CONSECUTIVELY TO ANY AND ALL PREVIOUS SENTENCES. ALL COSTS OF THIS APPEAL ASSESSED TO BOLIVAR COUNTY.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.**