819 So.2d 532 (2001)
Alfred J. WILLIAMS a/k/a Alfred Jerome Williams, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00884-COA.
Court of Appeals of Mississippi.
October 16, 2001.
Rehearing Denied March 5, 2002.
Certiorari Denied June 13, 2002.
*534 James A. Williams, Meridian, Attorney for Appellant.
Office of the Attorney General by Scott Stuart, Attorney for Appellee.
Before KING, P.J., BRIDGES, and IRVING, JJ.
BRIDGES, J., for the Court:
¶ 1. This case comes from the Circuit Court of Lauderdale County, Honorable Larry Roberts presiding. Alfred Williams was indicted on the charges of being a felon in possession of a firearm and two counts of armed robbery. Williams was found guilty and was sentenced to serve terms of life on each of the three counts in the custody of the Mississippi Department of Corrections without eligibility for early release. Williams appeals his case to this Court on the basis of two issues:

*535 1. WHETHER THE APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.
2. WHETHER THE TRIAL JUDGE WAS IN ERROR FOR FAILING TO GIVE A LIMITING INSTRUCTION SUA SPONTE CONCERNING "BAD ACTS" AND PRIOR CONVICTIONS EVIDENCE PRESENTED BY THE PROSECUTION.
Finding no error, we affirm.

FACTS
¶ 2. On April 24, 1996, a light-skinned black man with a thin mustache walked into the office of the Red Cross in Meridian, Mississippi. He began to look at some pamphlets. Dorothy Reeves, an employee, asked the man if she could help him. The man pulled out a silver pistol and told Reeves to not be scared, that he just wanted her money. He asked Reeves if anyone else was in the building. He then saw Elizabeth Huff, a fellow employee at the Red Cross and motioned for her to come into the hallway. The robber took a gold pendant from Reeves and a ring from Huff. He also emptied Huff's purse, taking eleven dollars in the form of a one dollar bill and one ten dollar bill. He then made the two women enter a restroom, telling them to stay there until he left. He pushed a copier in front of the door and tried to break into a nearby Coca-Cola machine. After failing to break open the Coke machine, the robber exited the building. Reeves and Huff waited until they believed the robber had left. They then pushed the restroom door open and called the police.
¶ 3. The Meridian Police Department came to the Red Cross office. Reeves and Huff told them what had happened and gave the officers a description of the robber. While searching for the robber around the general area of the crime, the officers encountered a young man who told them he had seen a man matching the description running towards a nearby apartment complex. Lieutenant Jeff Lewis of the Meridian Police Department drove to the complex. Lewis saw Arthur Williams working on a car at a nearby house. He asked if Arthur had seen anyone fitting the description given by the two workers at the Red Cross. Arthur told the officer that his brother, Alfred, did, and he was inside the house. Arthur then went into his house and brought his brother outside to speak to the police officer.
¶ 4. Alfred fit the general description given by Huff and Reeves, except that his clothes did not match those described as being worn by the robber. Alfred was sweating profusely. Lewis asked Alfred if he was willing to go with him "to clear the situation up." Both Alfred and Arthur Williams went with Lewis. The officer drove the two brothers to the Red Cross office where the crime occurred. Huff and Reeves recognized and identified Alfred Williams as the person who had robbed the Red Cross office. Both Reeves and Huff, however, pointed out that Alfred was wearing different clothes at the time of the robbery.
¶ 5. The police obtained a search warrant to search Arthur Williams's home, where Alfred was living at the time. They found a ring and pendant underneath a sofa that matched the description given by Huff and Reeves as the items stolen from them. The police also found clothing that matched the description given to them by the police dispatch of the clothing worn by the robber. However, the description given by the dispatch did not match the description given by the witnesses. Lastly, *536 they found a chrome pistol beneath a sink in the kitchen that matched the description of the weapon used in the robbery. Arthur Williams claimed that the gun belonged to another roommate, Willy Walker. The officers delivered Huffs ring to her. She identified it as being the ring taken from her during the robbery. The officers delivered the pendant to Reeves. She identified it as being the pendant taken from her during the robbery. Upon being taken to the police station, Alfred Williams was searched by the officers. They found one ten dollar bill and a one dollar bill as the only currency he possessed. He was then arrested and charged with two counts of armed robbery and one count of being a felon in possession of a firearm.
¶ 6. During the trial, the prosecution was allowed to enter evidence of Williams's previous felony convictions to prove he was a felon in possession of a firearm. The defense did not object before or during the trial to this evidence being admitted. The defense also did not object to the use of the "show up" identification (taking Williams to the Red Cross for identification before arrest) by the police. The prosecution used the evidence of the jewelry, currency, and weapon found in Alfred's possession or in the house he lived in, along with the victim's testimony, to prove he was the robber in this case. The jury agreed, delivering a verdict of guilty on all counts.

DISCUSSION OF THE LAW

STANDARD OF REVIEW
¶ 7. The standard of review for ineffective counsel was stated by the Supreme Court of Mississippi in Hiter v. State, 660 So.2d 961, 965 (Miss.1995). The defendant must prove his attorney's performance was defective and the deficiency deprived the defendant of a fair trial. Id. This deficiency is assessed by looking at the totality of the circumstances. Id. There is also a strong presumption that the attorney's conduct fell within the wide realm of reasonable professional assistance, and this review is highly deferential to the attorney. Id.
¶ 8. The Supreme Court of Mississippi set forth the standard for reviewing sua, sponte instructions in Nettles v. State, 380 So.2d 246 (Miss.1980). The court stated that a failure to give an instruction is not itself a violation of the Constitution when used to prove habitual criminal status or prove an element of a crime. Instead, "the failure must be evaluated in light of the totality of the circumstances-including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors...." Nettles, 380 So.2d at 247.

ANALYSIS

1. WHETHER THE APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE COUNSEL GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.
¶ 9. Williams asserts that defense counsel violated his Sixth Amendment rights to effective counsel on a number of points. These points include:
1. She (defense counsel) failed to move to suppress the "show up" identification and have it excluded at trial.
2. She failed to move in limine to exclude proof of any conviction for the firearm charge except the burglary conviction.
3. She failed to object to admission of prior conviction, bad acts in the Pen *537 Pacs, and the presence of stolen property in the Williams's residence.
4. She failed to represent that Alfred Williams cooperated with the police, thereby emphasizing that he invoked his right to silence.
5. She failed to first interview Arthur Williams before putting him on the witness stand.
6. She failed to continue to insist upon a limiting instruction on use of the prior convictions of Arthur and Alfred.
7. She failed to prove that Arthur was as likely a suspect except for not having a profusely sweaty face upon the police arriving.
¶ 10. There is a strong presumption that a counsel's conduct is reasonable and professional and that decisions made are strategic. Murray v. Maggio, 736 F.2d 279, 282 (5th Cir.1984). Nevertheless, an attorney has certain "basic" duties when representing a criminal defendant, including the duties to "assist the defendant, to advocate the defendant's cause, to consult the defendant on important decisions and to keep the defendant informed on important developments." Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 11. The defendant must show some adverse effect upon his ability to conduct a defense before the denial of the right of counsel constitutes reversible error. Corley v. State, 536 So.2d 1314, 1317 (Miss.1988). The chief test used to determine the validity of a counsel's representation is stated in Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Strickland requires the reviewing court to review the proceedings in the lower court in a two-fold inquiry: (1) was the defense counsel's performance deficient when measured by the objective standard of reasonable professional competence, and if so, (2) was the defendant prejudiced by such failure to meet that standard? Id. The burden is on the defendant to prove both prongs. Taylor v. State, 682 So.2d 359, 363 (Miss.1996). There is a strong, yet rebuttable, presumption that the actions by defense counsel were reasonably strategic. Cole v. State, 666 So.2d 767, 775 (Miss.1995).
¶ 12. The standard in determining ineffective counsel is well-settled law. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Ashby v. State, 695 So.2d 589, 592 (Miss.1997).

A. The defense counsel failed to suppress the "show up" identification and have it excluded at trial.
¶ 13. Alfred Williams's initial identification occurred when police drove him to the scene of the robbery. There he was identified by the victims as the robber. Williams now contends that this identification was in violation of his civil right to due process. He contends that the identification was skewed because he was the only suspect presented to the victims to identify.
¶ 14. To successfully prove ineffective counsel, the defendant must first prove that counsel had an obligation to object to the admittance of the evidence. "Show up" identification procedure is not in itself a violation of state law. The Mississippi Supreme Court stated in York v. State, 413 So.2d 1372, 1377 (Miss.1982), that although "the practice of showing suspects singly to persons for the purpose of identification ... has been widely condemned... a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it...." The relevant factors to be considered, as set down by the Court, are: (a) the opportunity of the witness to view the criminal at the *538 time of the crime, (b) the witness' degree of attention, (c) the accuracy of the witness' prior description of the criminal, (d) the level of certainty demonstrated by the witness(es) at the confrontation, and (e) the length of time between the crime and the confrontation. Id. at 1381.
¶ 15. All of these factors tend to weigh heavily in the State's favor. The witnesses had ten minutes to look at the robber, giving them ample time to memorize his face and allow a positive identification. The witnesses' description of the robber fit Williams very well. The description fit him so well that it was the basis for the police officer's suspicion when he first contacted Williams. The witnesses both testified that they were reasonably certain that Williams was the robber both at the "show up" identification and at trial. Finally, the length of time between the robbery and the identification, while not specifically discussed in the record, appears to have not been more than a few hours. This is based on the fact that the police went to the house where Williams was residing within an hour of the robbery, and, upon apprehending him, took him directly to the scene of the robbery.
¶ 16. With these factors in mind, the counsel was under no professional obligation to object to the admission of the identification evidence. Therefore, Williams received effective counsel on this point.

B. The defense counsel failed to move in limine to exclude proof of any conviction for the firearm charge except the burglary conviction, and

C. The defense counsel failed to object to admission of prior convictions and bad acts in the Pen Pacs.
¶ 17. Although Williams does not explicitly point to a failure to stipulate in his list of issues, this Court infers from his brief that this failure to stipulate to the past convictions is the basis for the two sub-issues listed above. Williams argues that because the prior convictions were admitted into evidence, as opposed to being stipulated to, the evidence was prejudicial to Alfred. He argues that the introduction of this evidence showed that he had a criminal past dating back to his thirteenth birthday, and also that he had only been out of prison for two months on the date that the crime occurred.
¶ 18. This Court finds that counsel was under no duty to stipulate to the past convictions. There is a strong "presumption of effectiveness" as stated in Murray, 736 F.2d at 283. Counsel could easily have seen a stipulation as running counter to her trial strategy. The record clearly shows that the only evidence elicited from the past conviction reports dealt with the type and date each crime was committed. These facts would have had to have been admitted to prove an element of the charge "felon in possession of a firearm." Even if counsel had objected to the admission of this evidence, it would have justifiably been overruled. More importantly, counsel may have felt that a stipulation to these crimes would have given the jury the impression that the defendant had some reason to hide facts of the prior cases from them. "There is a strong, yet rebuttable, presumption that the actions by defense counsel [are] reasonably strategic." Cole, 666 So.2d at 775. The Appellant has not rebutted this presumption. Therefore, this Court finds that counsel was effective in her representation under these sub-issues.

D. The defense counsel failed to represent that Alfred Williams cooperated with the police, thereby emphasizing that he invoked his right to silence.
¶ 19. In this issue, Williams argues that counsel ineffectively failed to stress that he had cooperated with the police. He contends that this failure *539 caused the jury to focus on his invocation of his Fifth Amendment rights. "There is a strong presumption that a counsel's ... decisions ... are strategic." Murray, 736 F.2d at 282. Counsel's professional obligation to his or her client is to construct a strategy to be used to highlight those facts which prove innocence and downplay those that point to guilt. In this case, counsel decided not to discuss Williams's cooperation with the police. This decision may have been based on her knowledge that any testimony regarding Williams's cooperation with the police would merely have opened the door to further testimony that refuted this contention. Counsel decided that the benefit her client received from testimony regarding his cooperation would be less than the damage done by other testimony refuting this contention. Right or wrong, counsel still fulfilled her obligation to her client to act strategically in his best interest. Therefore, this Court believes that counsel performed effectively in defending him concerning this issue.

E. The defense counsel failed to first interview Arthur Williams before putting him on the witness stand.
¶ 20. "Appellant is under the duty to provide authority and support of an assignment of error, and failure to cite authority may be treated as a procedural bar, such that the appellate court is under no obligation to consider assignment." Robinson v. State, 726 So.2d 189, 189 (Miss.App.1998). Because of a lack of evidence and authority cited by the Appellant, this Court does not deem this sub-issue established and therefore refuses to review it.

F. The defense counsel failed to insist upon a limiting instruction on use of the prior conviction of Arthur and Alfred.
¶ 21. Williams next argues that the defense counsel's failure to request a limiting instruction concerning the use of the past conviction evidence for both Arthur and Alfred Williams constituted a reversible error. The only information elicited from the criminal reports of both brothers merely had to do with the date and type of crime. In no way were any irrelevant or overly prejudicial details entered into evidence. Further, the State was required to show Williams's past convictions to prove the charge of "felon in possession of a firearm." Therefore, the defense counsel had no duty in this particular case to ask the trial judge for a limiting instruction on evidence that was not overly prejudicial to the defendant or his witness. This Court finds that there was no error in counsel not asking for a limiting instruction.

G. The defense failed to try to prove that Arthur was as likely a suspect except for not sweating.
¶ 22. Williams finally argues that counsel should have offered evidence to point out that Alfred's brother, Arthur, fit the description of the robber as easily as Alfred did. He states that this could have given the jury reasonable doubt concerning the identification by the witnesses and allowed the stolen property's existence at Arthur's house to be attributable to someone other than Alfred. There are many justifiable reasons counsel did not offer Arthur as an alternative suspect. Discovery materials may have shown that Arthur had an alibi at the time of the robbery. The defendant could have told her not to use this route in proving his innocence. Regardless, counsel was only obligated to use a strategy that was most beneficial to her client. The fact that she did not pick a strategy that may seem attractive after the trial is completed does not create error.

*540 It is all too tempting for a defendant to second-guess counsel's assistance after conviction, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.
Strickland, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. She chose a strategy she deemed most beneficial to her client. Therefore, her representation was not ineffective on this point.

2. WHETHER THE TRIAL JUDGE WAS IN ERROR FOR FAILING TO GIVE A LIMITING INSTRUCTION SUA SPONTE CONCERNING THE "BAD ACTS" AND PRIOR CONVICTIONS EVIDENCE PRESENTED BY THE PROSECUTION.

A. Did the use of Alfred Williams's past convictions cause the trial judge to become responsible for delivering a sua sponte instruction concerning how this evidence was to be viewed by the jury?
¶ 23. Williams argues that the use of his past convictions to prove the charge of "felon in possession of a firearm" made the trial judge responsible for delivering a sua sponte instruction to the jury limiting the way in which the evidence was to be viewed. Responsibility for delivering a sua sponte instruction is governed according to the reason the evidence is admitted. Williams relies heavily on Robinson v. State, 735 So.2d 208 (Miss.1999). In this case, a judgment was reversed because the trial judge did not give a limiting instruction sua sponte on how the jury was to regard the defendant's prior convictions allowed into evidence under Mississippi Rules of Evidence 609(a)(2). Robinson is distinguishable from the facts of this case.
¶ 24. The present case does not deal with evidence admitted to impeach a witness. Rather, the evidence was admitted to prove an element of the crime "felon in possession of a firearm." Therefore, the correct law to be used is found in Nettles v. State, 380 So.2d 246 (Miss.1980). The court stated in this case that, concerning past criminal activity evidence admitted to prove an element of a crime, a sua sponte instruction is not necessary unless the "totality" of the circumstances call for it. Id. at 247. This totality is based on all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors. Id.
¶ 25. The State did not delve into Williams's past. It merely stated that Williams had been previously convicted on burglary and robbery charges. This did not overly prejudice Williams. More importantly, the overwhelming weight of the evidence supported the guilty verdict. He was identified by the witnesses of the crime, the stolen property was either found on his person or within his residence, and the police found a chrome pistol matching the one used in the robbery within easy reach of Williams. Therefore, based on the factors set forth in Nettles, this Court finds that a sua sponte instruction was not required in this case.

B. Did the lack of a Mississippi Rule of Evidence 609 balancing test regarding Arthur Williams's past convictions cause the jury's finding to be reversible, and, if not, was the trial judge beholden to giving a sua sponte limiting instruction concerning the use of the evidence admitted?
¶ 26. While cross-examining Arthur Williams, the State questioned him *541 about his past conviction of a felony offense and whether this was the reason he testified that the gun found at his residence belonged to another roommate. He answered in the affirmative, stating that he testified the gun belonged to someone else because it was illegal for him to own a firearm. Alfred Williams now contends that this case should be reversed and remanded because the trial court did not conduct a balancing test as required by Mississippi Rules of Evidence 609 before allowing the evidence of Arthur's past convictions to be admitted into evidence through his testimony.
¶ 27. Rule 609 requires that before evidence of past crimes can be used to impeach a witness, the crime must be (1)punishable by a one-year term of imprisonment and (2) a balancing test must be conducted on-the-record to determine whether the probative value of the evidence outweighs the prejudicial effect of the evidence. Peterson v. State, 518 So.2d 632, 635 (Miss.1987), admonishes that this is not a "mere idle gesture." In Peterson, the Mississippi Supreme Court reversed and remanded the case because the trial judge did not conduct a balancing test concerning evidence of the defendant's past conviction for possession of marijuana.
¶ 28. A later case, however, modified Peterson's holding. The Mississippi Supreme Court in DeLoach v. State, 722 So.2d 512(¶ 34) (Miss.1998), held that, although not completing the balancing test set forth in Mississippi Rules of Evidence 609 was an error, if the error were harmless based on the overwhelming evidence of the State, it would not constitute a reversible error. This Court finds that even though the trial judge was required to conduct a balancing test on-the-record, his failure to do so was harmless when viewed in connection with the overwhelming weight of evidence the State had prepared concerning Alfred Williams's guilt.
¶ 29. Williams finally argues that admission of Arthur Williams's past convictions should have made the trial judge responsible for a sua sponte limiting instruction. Robinson v. State, 735 So.2d 208(¶ 10) (Miss.1999), seems to support this finding. As noted above, this case reversed the trial judge's decision because the trial judge did not give a sua sponte limiting instruction concerning evidence admitted under Mississippi Rules of Evidence 609(a)(2). Id. at (¶ 10). However, the Mississippi Supreme Court altered this ruling in Bishop v. State, 771 So.2d 397 (Miss.App.2000). In Bishop, the court held that a lack of sua sponte instruction would not make the case reversible unless the lack of instruction rose above harmless error based on the totality of the circumstances. Id. at 401. The Court in Forrest v. State, 335 So.2d 900, 903 (Miss.1976), stated that "harmless error" is present only when "it is apparent on the face of the record that a fair minded jury could have arrived at no verdict other than that of guilty [even if the error were rectified]." Based on these precedents, this Court finds that even if the sua sponte instruction were given, the jury would still have found the defendant guilty. This decision is based on the overwhelming evidence of Williams's guilt.
¶ 30. In conclusion, Williams was not deprived of his constitutional right to effective counsel based on the two-prong test set forth in Strickland v. Washington, nor was the trial judge responsible for giving sua sponte instructions. For these reasons, we affirm the holdings of the trial court.
¶ 31. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I AND II, ROBBERY BY USE OF A *542 DEADLY WEAPON, AND COUNT III, POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF LIFE IMPRISONMENT ON EACH COUNT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH NO POSSIBILITY OF EARLY RELEASE IS HEREBY AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR.