856 So.2d 334 (2003)
Maurice FERGUSON, a/k/a Edward Hunter, a/k/a Michael Ferguson, a/k/a Lee Tollfree, a/k/a Arthur Ferguson, a/k/a MIchael Lewis, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00120-COA.
Court of Appeals of Mississippi.
March 4, 2003.
Rehearing Denied May 6, 2003.
*336 Carol L. White-Richard, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
EN BANC.
KING, P.J., for the court.
¶ 1. Maurice Ferguson was found guilty in the Circuit Court of Washington County, Mississippi of armed robbery and possession of a firearm by a convicted felon. He was sentenced to serve a term of life imprisonment, as an habitual offender in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction, *337 Ferguson has appealed and raised the following issues:
I. Whether the trial court erred when it denied his motion to suppress the photo line-up shown to the victim.
II. Whether the trial court erred by failing to issue a limiting instruction, sua sponte, regarding Ferguson's prior felony convictions.
III. Whether the trial court erred when it denied his motion for a directed verdict and whether the verdict was against the overwhelming weight of the evidence.

FACTS
¶ 2. On the afternoon of October 18, 1999, a man (later identified as Maurice Ferguson) walked into the Check Into Cash business in Greenville, Mississippi. Mrs. Shawna Tillis stated that the man, who was unknown to her, approached the counter and inquired about getting a cash advance. Tillis talked to this man for approximately five minutes regarding the information required to obtain a cash advance loan. Tillis stated that the man indicated that he did not have the information at hand to complete the forms and would return later.
¶ 3. Within a few moments, Tillis heard the door open again. Ferguson, the same individual, was standing in front of her with a gun pointed directly at her. Ferguson demanded that Tillis give him the money in the cash register and the vault. Tillis gave Ferguson the cash located in the cash register and told him that the store did not have a vault. Ferguson instructed her to get on the floor and not say anything. Ferguson then took the cash and fled the scene.
¶ 4. Shortly after the robber left, Tillis called the police and gave a description of his appearance. Officer Brian Williams of the Greenville Police Department received the description and searched the area looking for the suspect. The police were not able to locate the suspect on the day of the robbery.
¶ 5. On October 23, 1999, while driving down Washington Avenue in Greenville with her husband, Tillis noticed a man that looked similar to the person who had robbed her. Her husband stopped the car, approached the man and questioned him about the robbery. According to Tillis, the man acted as though he knew nothing about the incident and did not know Shawna Tillis.
¶ 6. Afterwards, Tillis and her husband drove to a furniture store and called the police. The police searched the area but were unable to locate the suspect. Subsequently, Tillis was asked to view a photographic line-up in an effort to identify the robber. Ferguson's photograph was not among those viewed by Tillis.
¶ 7. On October 27, 1999, Officer Jeffrey Wilson of the Greenville Police Department indicated that the investigation had focused on a suspect and asked Tillis to view another photographic line-up. Officer Wilson testified that he composed the photographic line-up by considering the "average height, that it be similar, skin color, weight, hair cuts, facial hair." Ferguson's picture, which had been taken on the same date as the line-up, was included among the pictures shown to Tillis. After viewing all of the pictures, Tillis immediately identified Ferguson as the man who had robbed her at gunpoint.
¶ 8. On January 24, 2000, Ferguson was indicted on the charges of armed robbery and possession of a firearm by a convicted felon. Ferguson was found guilty of these charges, and sentenced as an habitual offender to two consecutive life sentences without parole.

*338 ISSUES AND ANALYSIS

I.

Whether the trial court erred when it denied his motion to suppress the photo line-up shown to the victim.
¶ 9. Ferguson contends that the failure of the trial court to suppress evidence of the photographic line-up identification was prejudicial error. Ferguson claims that after being informed that the investigation had focused on a suspect, Tillis was asked to view a photographic line-up to identify the robber. Ferguson maintains that the nine photographs included in the line-up each contained a date at the bottom. The dates on eight of the photographs were from three to nine years previous. The date on Ferguson's photo was the date of the line-up. He contends that this caused him to be conspicuously singled out, and tainted the identification.
¶ 10. Ferguson suggests that the recent date on his photograph and the officer's comment that the investigation had focused on a suspect rendered the identification so impermissibly suggestive that it should have been suppressed. This Court reviews a question of improper pre-trial identification in the following manner:
Regarding an improperly suggestive pre-trial identification tainting subsequent identification at trial, this Court evaluates the factors enumerated in Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), to determine whether the in-court identification is "sufficiently reliable to overcome the taint of the prior improperly attained identification." Gayten v. State, 595 So.2d 409, 418 (Miss.1992). The Biggers factors are:
(1) the opportunity of the witness to view the accused at the time of the crime;
(2) the degree of attention exhibited by the witness;
(3) the accuracy of the witness' prior description of the criminal;
(4) the level of certainty exhibited by the witness at the confrontation;
(5) the length of time between the crime and the confrontation.

Fleming v. State, 604 So.2d 280, 302 (Miss.1992).
Ellis v. State, 667 So.2d 599, 605 (Miss. 1995).
¶ 11. An application of the Biggers factors to this case establishes: (1) Tillis had ample opportunity to observe Ferguson. She talked with him for approximately five minutes shortly before the robbery. She also talked with him again when he returned a few moments later to rob the business; (2) While Ferguson was present, there was nothing to distract Tillis' attention from him; (3) Tillis phoned a description of the robber to the police department immediately after the robbery. That description was accurate except as to Ferguson's height and age; (4) The record in no way indicates that Tillis expressed any uncertainty about her identification of Ferguson; (5) The time between the robbery was short. The robbery occurred on Monday, October 18, 1999. Tillis saw Ferguson again on Saturday, October 23, 1999. Tillis identified Ferguson in a photo line-up on October 27, 1999.
¶ 12. The application of the Biggers factors caused the trial court, and this Court, to conclude that there was sufficient indicia of reliability to allow the identification. While Tillis' description was inaccurate as to Ferguson's height and age, these inconsistencies go to the issue of credibility rather than reliability. Questions of credibility are resolved by the jury. Noe v. State, 616 So.2d 298, 303 (Miss.1993).
*339 ¶ 13. Where there is substantial credible evidence which supports the jury verdict, we are obligated to affirm. Sanders v. State, 730 So.2d 1154(¶8) (Miss.Ct. App.1999). Ferguson has failed to establish that the jury's verdict was not supported by substantial credible evidence.
¶ 14. Upon review of the record, we find that there was credible evidence to support the trial court's decision.

II.

Whether the trial court erred by failing to issue a limiting instruction, sua sponte, regarding Ferguson's prior felony convictions.
¶ 15. Ferguson contends that the trial court erred by failing to issue a limiting instruction, sua sponte, regarding his prior felony convictions being used as proof in the possession of a firearm by a convicted felon charge and of his status as an habitual offender.
¶ 16. Responsibility for delivering a sua sponte instruction is determined by the reason the evidence is admitted. Williams v. State, 819 So.2d 532(¶23) (Miss.Ct.App.2001). In Newell v. State, 308 So.2d 71, 78 (Miss.1975), the supreme court authorized instructions by the court on its own motion, but held that the trial judge would not be put in error if he failed to instruct on a point of law on which he was not specifically requested in writing to instruct. Nettles v. State, 380 So.2d 246, 247 (Miss.1980).
¶ 17. The State introduced Ferguson's three prior felony convictions of armed robbery to prove that he was previously convicted of at least two prior felonies, and that he was a convicted felon, which was an element of one of the offenses charged. At trial, no instruction was requested by Ferguson nor was an objection made to the admission into evidence of these prior felony convictions. The failure to object to the introduction of this evidence must be evaluated in light of the totality of the circumstancesincluding all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other related factors. Henton v. State, 752 So.2d 406(¶8) (Miss. 1999).
¶ 18. However, when evidence is introduced that the defendant has a prior conviction for the same offense for which he is being tried, both counsel and the court have a duty to minimize the risk that the jury would infer guilt on the charges from the fact of previous convictions on similar charges through a request for and giving of a curative instruction. U.S. v. Diaz, 585 F.2d 116, 118 (5th Cir.1978). The supreme court has noted that "the better practice is that a limiting instruction be granted by the trial judge sua sponte when proper request is not made by defense counsel." Peterson v. State, 518 So.2d 632, 638 (Miss.1987). While giving a limiting instruction sua sponte may be the "better practice" when a request by defense counsel has not been made, failure to give a limiting instruction sua sponte is not always reversible error. Williams v. State, 819 So.2d 532 (¶¶24-28) (Miss.Ct. App.2001).
¶ 19. Miss.Code Ann. Section 97-37-5 (Rev.2000)[1] does not limit the number of *340 prior felony convictions to be proven. While we are troubled by the number of prior felony convictions used to establish the element of the offense charged, we find that since the evidence was admitted to prove an element of the offense charged, a sua sponte instruction is not necessary unless the "totality" of the circumstances call for it regarding the admission of past criminal acts in evidence to prove an element of the crime. Nettles, 380 So.2d at 247. This totality is based on all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors. Id.
¶ 20. In the trial court's instructions to the jury, the trial judge indicated that the jury should not "single out" one instruction alone, but consider the instructions as a whole. The trial judge instructed the jury on its duty to determine the facts "from the evidence produced in open court." The trial judge then instructed the jury on using common sense and sound honest judgment in considering and weighing the testimony of each witness who testified in the case, and that the arguments made by the attorneys were intended to help in understanding the evidence and applying the law.

III.

Whether the trial court erred when it denied his motion for a directed verdict and whether the verdict was against the overwhelming weight of the evidence.
¶ 21. Ferguson contends that the trial court erred by denying his motion for a directed verdict and that the verdict was against the overwhelming weight of the evidence. He maintains that the State failed to prove the elements for armed robbery under Section 97-3-79 of Mississippi Code Annotated 1972, as amended.[2]
¶ 22. The standard of review applied to motions for directed verdict or JNOV is as follows:
Requests for a directed verdict and motions JNOV implicate the sufficiency of the evidence.
[W]e must, with respect to each element of the offense, consider all of the evidencenot just the evidence which supports the case for the prosecutionin the light most favorable to the verdict. The credible evidence which is consistent *341 with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Gleeton v. State, 716 So.2d 1083(¶14) (Miss.1998).
¶ 23. In determining whether or not a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial. Isaac v. State, 645 So.2d 903, 907 (Miss.1994).
¶ 24. In reviewing the evidence presented to the jury, we find that the State presented evidence in accordance with Section 97-3-79 of Miss.Code Ann. 1972, as amended, which revealed that Ferguson intentionally exhibited a deadly weapon which placed Tillis in fear of injury, and that Ferguson took funds from the store. Having reviewed this evidence, we find that the trial court did not err in its denial of the motion for directed verdict nor do we find that the verdict was against the overwhelming weight of the evidence.
¶ 25. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I ARMED ROBBERY AND COUNT II POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF LIFE ON EACH COUNT TO BE SERVED CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT PAROLE IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] Miss.Code Ann. § 97-37-5 (Rev.2000), Possession by felon provides: (1) It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm or any bowie knife, dirk knife, butcher knife, switchblade knife, metallic knuckles, blackjack, or any muffler or silencer for any firearm unless such person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the U.S.Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this section.

(2) Any person violating this section shall be guilty of a felony and, upon conviction thereof, shall be fined not more than Five Thousand Dollars ($5,000.00), or committed to the custody of the State Department of Corrections for not more than three (3) years, or both.
(3) A person who has been convicted of a felony under the laws of this state may apply to the court in which he was convicted for a certificate of rehabilitation. The court may grant such certificate in its discretion upon a showing to the satisfaction of the court that the applicant has been rehabilitated and has led a useful, productive and law-abiding life since the completion of his sentence and upon the finding of the court that he will not be likely to act in a manner dangerous to public safety.
[2] Section 97-3-79 of Miss.Code Ann.1972, as amended: Robbery using deadly weapon; punishment provides: Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.