¶ 1. On April 12, 2002, Keith Smith was convicted of the March 19, 2000, murder of Michael Reed in the Circuit Court of Clay County and sentenced to life imprisonment. Lewis filed a motion for judgment notwithstanding the verdict, which was denied. Aggrieved by this ruling, Smith filed a timely notice of appeal and asserts the following two issues:
 I. WHETHER SUFFICIENT EVIDENCE WAS PRESENTED TO CONVICT THE APPELLANT ON THE INDICTED CHARGE.
 II. WHETHER THE COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR DIRECTED VERDICT AT THE CLOSE OF THE ENTIRE CASE; WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE; AND WHETHER THE COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A NEW TRIAL.
Finding no error, we affirm.
 STATEMENT OF FACTS ¶ 2. On March 19, 2000, Michael Reed and Taurus Harris went to a rural nightclub known as The Love Connection located in Una, Mississippi. The nightclub had weekend crowds of approximately 300-400 people and on March 19, 2000, the appellant, Kevin Smith, was also in attendance. Smith and Reed had prior problems, the origins of which are not clear, and Reed attempted to make amends with Smith when they encountered one another.
 ¶ 3. Reed and Harris left the nightclub after socializing for about an hour. While leaving, they were greeted by Eddie Marble, the parking attendant, with whom they spoke as they were preparing to leave the parking lot. As they were talking with the parking attendant and pulling out of their parking spot, they saw Smith leave the nightclub. Harris observed Smith walk to his vehicle, retrieve an assault rifle and take aim at Harris's Jeep Cherokee. Harris grabbed a 30-30 rifle from behind the back seat of his Cherokee and aimed his weapon at Smith. The two exchanged gunfire as Reed attempted to drive the vehicle away. Harris heard the Jeep's engine rev, looked over, and saw that Reed, who was driving, had been shot in *Page 1219 
the head. Harris attempted to steer the Cherokee out of the parking lot, striking another vehicle, before running into a ditch. He then left on foot to seek medical attention for Reed. Law enforcement and medical personnel were summoned, and Reed was pronounced dead from a gunshot wound to the head.
 ¶ 4. On October 6, 2000, Smith was indicted for the murder of Reed. Smith's trial was held in the Circuit Court of Clay County and on April 12, 2002, Smith was found guilty of the murder of Reed. Upon being found guilty for the murder of Reed, Smith was sentenced to serve a term of life imprisonment with the Mississippi Department of Corrections.
 LEGAL ANALYSIS
I. WHETHER SUFFICIENT EVIDENCE WAS PRESENTED TO CONVICT THE APPELLANT ON THE INDICTED CHARGE.
 STANDARD OF REVIEW ¶ 5. As stated previously by the Mississippi Supreme Court, the authority to interfere with the verdict of a jury is quite limited. McFee v. State, 511 So.2d 130, 133 (Miss. 1987). All evidence must be reviewed in the light most consistent with the verdict and the State must be given all reasonable inferences from the evidence. Id. When viewed in this light, if reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, we must reverse. Id. While at the same time, if the record indicates that there was sufficient evidence of such quality and weight that a reasonable and fair-minded jury could arrive at different conclusions, the verdict of guilty is beyond our authority to disturb. Id. at 134.
 DISCUSSION ¶ 6. Smith's first assignment of error is that the State failed to prove all of the elements of the crime for which he was indicted. Smith contends that the State failed to prove the requisite state of mind to commit murder, because there was no showing he had designed and planned to kill Reed. Smith further argues that the State failed to reconstruct the events of the night of March 19, 2000, specifically those facts which would prove beyond a reasonable doubt Smith's involvement in the death of Reed.
 ¶ 7. While the testimony of the witnesses for the State and the defense were in direct opposition, it is a deeply rooted principle of Mississippi law that the jury acts as fact-finder and must determine the credibility of the witnesses, and the proper weight to be assigned to their testimony. Hogan v.State, 854 So.2d 497, 502 (¶ 17) (Miss.Ct.App. 2003) (quotingJackson v. State, 614 So.2d 965, 972 (Miss. 1993)).
 ¶ 8. As stated by Mississippi law, on review we must look at the evidence in the light most favorable to the verdict and make a determination of whether or not that verdict is supported by the evidence at trial. At trial, there was competing evidence of whether or not Reed and Smith actually shook hands and made amends. What was undisputed by either side is that there had been previous conflict between the two. All witnesses also stated that Smith, Harris, and Reed were all present in the parking lot at the time of the shooting, allowing Smith the opportunity to fire the shot which killed Reed. Testimony was presented by Eddie Marble, who was the parking attendant for the club, that Smith retrieved a rifle from the trunk of a red Pontiac Grand Prix, which was subsequently identified as Smith's vehicle, and shot the rifle at Harris and Reed as they pulled out of the parking lot. The jury also saw the spent shell casings from the 7.62 x 39 millimeter rifle. The jury further saw identical casings as those found in the parking lot of the nightclub *Page 1220 
which were also present at Smith's residence. The jury heard the testimony of Ms. Selena Williams who stated that she had danced with Reed that night and he was nervous about Smith and his friends. Also, Deputy Sheriff Robert Gaskin testified that as he responded to the call at The Love Connection he was met by a red colored vehicle meeting the description of Smith's and a white Suburban-type vehicle, leaving from the direction of the nightclub.
 ¶ 9. Based upon the evidence, we cannot reason that the State failed to prove beyond a reasonable doubt Smith's involvement in the crime, nor can we state that Smith did not possess the requisite state of mind to commit murder. The testimony was undisputed that Reed and Smith had encountered one another at the nightclub early in the night and that Reed shook hands with all of Smith's friends. The testimony was conflicting as to whether or not Reed and Smith actually shook hands, but it is clear that prior problems existed, thus forming the motive and necessary state of mind for murder.
 ¶ 10. Appellant further contends that since the assault rifle used in the crime was never recovered, the State cannot meet its burden of proof. In support of this position, Smith relies on the Oregon Court of Appeals case of State v. Hughes, 9 Or.App. 445,497 P.2d 686 (1972). The Hughes decision reversed the conviction of a "convicted person in possession of a concealable firearm" because the prosecution failed to prove ownership, possession, custody or control of the firearm. As in the casesub judice the actual firearm involved in the crime was not recovered and was not available to be entered into evidence. Though it is preferable for the State to recover the firearm used in the commission of a crime and for that weapon to be introduced into evidence, this is not always possible, as murder weapons have a tendency to become lost by their owners. At trial, evidence was presented that the exact type of spent shell casings found in the parking lot area of the nightclub where Smith fired the weapon, were found at Smith's residence. There was further testimony by Warren Cousins, Jr. stating that Smith's brother, Earnest Doss, offered to sell him an assault rifle, an SKS or AK-47, which both fire a 7.62 × 39 millimeter shell. Further, there was testimony by Smith that he indeed fired a weapon that was left in his vehicle by some people he met at a store that went riding around and consuming alcohol with Smith, but that he fired the gun in self-defense. Smith further stated that after firing the weapon, the rifle jammed, and he threw it to the ground in the parking lot of the nightclub. While the Hughes
decision stated that proof of ownership, possession, custody or control of the firearm in question would be required for one charged with "convicted person in possession of a concealable firearm," the case sub judice deals with murder. Smith admitted to firing a rifle at Harris's Jeep Cherokee; a gunshot residue test, which tested positive for gunpowder residue, was conducted on Smith; and shell casings identical to the ones found at The Love Connection were also present in the driveway of Smith's residence. It cannot be stated that the State failed to prove the essential elements of the crime; therefore we affirm.
II. WHETHER THE COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR DIRECTED VERDICT AT THE CLOSE OF THE ENTIRE CASE, WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE, AND WHETHER THE COURT ERRED IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL.
 STANDARD OF REVIEW ¶ 11. We apply different standards in reviewing motions for JNOV and for a new *Page 1221 
trial. The standard of review applied to motions for directed verdict or JNOV is as follows:
 Requests for a directed verdict and motions JNOV implicate the sufficiency of the evidence. [W]e must, with respect to each element of the offense, consider all of the evidence — not just the evidence which supports the case for the prosecution — in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Ferguson v. State, 856 So.2d 334, 340-41 (¶ 22) (Miss.Ct.App. 2003) (citing Gleeton v. State, 716 So.2d 1083, 1087 (¶ 14) (Miss. 1998)) (overruled on other grounds by Miss. Transp.Comm'n v. McLemore, 863 So.2d 31 (Miss. 2003)).
 ¶ 12. It is well-settled law in Mississippi that in order to make a determination that the jury's verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse that verdict only when it is determined that the circuit court has abused its discretion in failing to grant a new trial.Dudley v. State, 719 So.2d 180, 182 (¶ 8) (Miss. 1998) (citingHerring v. State, 691 So.2d 948, 957 (Miss. 1997)). As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper. Id. (citing May v. State,460 So.2d 778, 781-82 (Miss. 1984)).
 ¶ 13. Thus, the standard of review for the grant or denial of a JNOV is whether "sufficient evidence existed to warrant the verdict and whether fair-minded jurors could have arrived at the same verdict," and the standard for the grant or denial of a new trial is whether verdict was "so contrary to the overwhelming weight of the evidence" that not overturning the verdict would be an "unconscionable injustice." Eichelberger v. State,816 So.2d 466, 467 (¶¶ 3-4) (Miss.Ct.App. 2002).
 DISCUSSION ¶ 14. Smith argues that he was not provided a fair and impartial jury. An observer, Ms. Mary Buford appeared on the second day of trial and thought that one of the jurors, Daniel Lee, was related to Reed by marriage. Upon making this determination, Ms. Buford brought the matter to the attention of Smith's counsel, which makes it troubling that this issue was not raised until after the return of the jury's verdict. Upon questioning Ms. Buford and Freddie Reed, the deceased's brother, the trial court discovered that Lee and Reed were related distantly, if at all, by marriage. Reed's aunt married Lee's uncle. Freddie Reed testified that his family had no dealings with Daniel Lee or any of his siblings and that Garfield Lee, Daniel Lee's father, and Lee's family were not considered relatives.
 ¶ 15. In reviewing this matter, this Court will not reverse the decision of the trial court unless there has been clear error.Smith v. State, 534 So.2d 194, 198 (Miss. 1988). In this instance, the trial court found that there was no active contact between the families, the families live a considerable distance from one another, and that Freddie Reed had never seen Daniel Lee at any type of family function or reunion. There is substantial evidence which indicates that if a degree of relationship *Page 1222 
exists, Lee was not aware of any such relationship, and his decision was unaffected. Therefore, we will not disturb the trial court's ruling.
 ¶ 16. Smith's next assignment of error is that the jury's verdict was against the overwhelming weight of the evidence and a directed verdict should have been granted. At trial, two competing views were presented through the witnesses. These two sets of witnesses were in direct contradiction to one another regarding the location of Smith at particular times, whether Smith fired the first shot in the altercation, and whether Smith and Reed shook hands and made amends. Each of these factors were very important to the outcome and presentation of the case as they weighed heavily in determining Smith's state of mind at the time of the shooting.
 ¶ 17. As stated above, the jury acts as fact-finder and must determine the credibility of the witnesses, and the proper weight to be assigned to their testimony. Ladnier v. State,878 So.2d 926, 931 (¶ 16) (Miss. 2004). In this instance, the jury determined that the testimony of the prosecution was credible and in doing so assigned a heavier weight to their testimony. As it is not the role of this Court to act as fact-finder, we will not disturb a jury's verdict on appeal "unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand, would be to sanction anunconscionable injustice." Burrell v. State, 613 So.2d 1186,1191 (Miss. 1993). As the list of evidence detailed in section one above illustrates, the verdict of the jury was supported by the record, and a reasonable fair-minded juror could find for the prosecution in this instance. Therefore, we affirm.
 ¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY OFCONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THEMISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OFTHIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.