ISHEE, J.,
 

 for the Court.
 

 ¶ 1. On August 17, 2007, Benito Jo Ruiz, Jr., was found guilty in the Circuit Court of Coahoma County of sexual battery. He was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections, and he was ordered to under
 
 *311
 
 go psychological evaluation and treatment as well as alcohol and drug treatment. In addition, Ruiz was ordered to register as a sex offender pursuant to Mississippi Code Annotated section 45-33-25 (Supp.2008). Aggrieved by the circuit court’s ruling, Ruiz appeals, alleging two assignments of error: (1) the evidence was insufficient to support the verdict; and (2) the verdict was against the overwhelming weight of the evidence. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. This case involves the sexual battery of an eight-year-old girl, G.W.,
 
 [1]
 
 by Ruiz during the spring of 2006. The case was tried before a jury which unanimously found that Ruiz was guilty of committing the crime. The precise day on which the crime occurred is unclear. At trial, Ruiz’s girlfriend, Jan Harbin, testified that on April 19, 2006, she received a call from Ruiz asking her to come over because he had a private matter that he wished to discuss with her. When she arrived at Ruiz’s house, he confessed to her that he had inappropriately touched a young girl. Harbin recommended that they call the sheriffs office to inform them of the situation, and she stayed with Ruiz until two deputies arrived at his house. The officers advised Ruiz of his rights and took him to the sheriffs department. Harbin also went to the sheriffs department, where she gave her statement to the officers.
 

 ¶ 3. Deputy Sheriff Chris Doss testified that on April 19, 2006, he received a call in reference to a child fondling. Deputy Doss was instructed to go to Ruiz’s house, and when he arrived, Ruiz told Deputy Doss that he wished to turn himself in to the authorities for touching an eight-year-old girl on the outside of her pants. Deputy Doss stopped Ruiz from continuing his story and read him his
 
 Miranda
 
 rights. Investigator Fernando Bee also arrived at Ruiz’s house, and while he was there, he received a call reporting a child rape case. Investigator Bee left Ruiz’s house to go investigate the case while Deputy Doss took Ruiz to the sheriffs department. Investigator Bee soon realized that the call he had received regarding the child rape case and the call Deputy Doss had received about the child fondling arose from the same incident involving G.W. Investigator Bee then returned to the station to talk to Ruiz.
 

 ¶ 4. Ruiz told Investigator Bee that one night he had been drinking beer at the home of G.W.’s grandmother, G.M. Ruiz’s cousin was also there, and the two women wanted to go out. They needed a babysitter for G.W., so Ruiz volunteered to watch her. Ruiz took G.W. to his house where he then drank more beer with his father, Benito Ruiz, Sr. After his father went to bed, Ruiz admitted that he sat on the love seat with G.W., and he “put [his] hands down on her private [area] on the outside of her pants.” He then “told [G.W.] to stand up and bend over the arm of the love seat and [he] took [his] penis out and rubbed it against her-against the back of her down by her private area.” Ruiz further stated that he never put his penis inside of her, nor did he ejaculate when he rubbed against her, and he asked G.W. not to tell anyone what happened. According to Ruiz, he then sent G.W. to his bedroom to go to sleep and instructed her to lock the door. He claimed that the only time he had touched G.W. inappropriately was that incident on the love seat.
 

 
 *312
 
 ¶ 5. At the time of trial, G.W. was nine years old, and her testimony was somewhat different than the statement given by Ruiz. She testified that while she was at Ruiz’s house he did not touch her between her legs while they were sitting on the love seat; however, he had asked her to bend over the sofa, and when she did, he “hunch[ed]” her. She further testified that she stayed overnight at Ruiz’s house and slept in his bedroom. When G.W. went to bed, she said that she did not have any clothes on, and that Ruiz, who was also undressed, came into her bedroom and got on top of her, and he “hunch[ed]” her again. She testified that he put his private part in hers, and it hurt and lasted a long time.
 

 ¶ 6. G.M. learned in April 2006 what had happened. G.M. testified that Ruiz came to her house one morning and asked if G.W. wanted to go to the store with him. G.W. replied that she did not and put her head down. When G.M. asked G.W. what was wrong, G.W. told her what Ruiz had done. G.M. confronted Ruiz with G.W.’s story, and he confessed that he might have done something like that. On April 19, 2006, G.M. called the sheriffs office and spoke with Investigator Bee.
 

 ¶ 7. Patricia White, a family nurse practitioner and certified nurse mid-wife, testified that G.M. brought G.W. in to be examined on April 21, 2006. G.M. told White that someone had touched G.W. between her legs and that it had occurred two weeks earlier. White examined G.W. and found breaks in the tissue around the urethra and breaks in her hymen. White testified that the hymen is located inside the opening of the vagina, between the labia, and it should be intact in virgins and children unless there has been some kind of trauma.
 

 DISCUSSION
 

 I. Sufficiency of the Evidence
 

 ¶ 8. Ruiz first complains that the evidence presented was insufficient to sustain a guilty verdict. The standard of review for appeals regarding sufficiency of the evidence requires the appellate court to view the evidence “in a light most favorable to the State. The credible evidence consistent with the defendant’s guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence.”
 
 McCoy v. State,
 
 878 So.2d 167, 174(¶ 17) (Miss.Ct.App.2004) (quoting
 
 Muscolino v. State,
 
 803 So.2d 1240, 1243(¶ 10) (Miss.Ct.App.2002)). The court must determine whether the evidence demonstrates “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.”
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005). The jury has the duty of resolving matters regarding the weight and credibility of the evidence.
 
 Smith v. State,
 
 904 So.2d 1217, 1221(¶ 11) (Miss.Ct.App.2004). This Court “may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.”
 
 Id.
 
 In addition, with regard to this specific type of case, the Mississippi Supreme Court has consistently held the following:
 

 the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where the testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime.
 

 
 *313
 

 Maiden v. State,
 
 802 So.2d 134, 136(¶ 5) (Miss.Ct.App.2001) (citing
 
 Cross v. State,
 
 759 So.2d 354, 356(¶ 11) (Miss.1999)).
 

 ¶ 9. In reviewing the evidence in a light favorable to the State, we find that the evidence was sufficient to sustain the guilty verdict. G.W. testified that she spent the night at Ruiz’s house, and he came into his bedroom, where he had told her to sleep. She further testified to the following:
 

 [State]: And were your clothes on when you went to bed?
 

 [G.W.]: No.
 

 [State]: And when you saw Benito, did he have clothes on?
 

 [G.W.]: No.
 

 [State]: And did he come into the room where you were at?
 

 [G.W.]: Yes.
 

 [State]: And did you see him at a time when he was undressed, didn’t have any clothes on?
 

 [G.W.]: Yes.
 

 [State]: And when you saw him like that, what did he do?
 

 [G.W.]: Hunch me.
 

 [State]: Say that one more time?
 

 [G.W.]: Hunch me.
 

 [State]: Hunched you. Did he get on top of you?
 

 [G.W.]: Yes.
 

 [[Image here]]
 

 [State]: And that night, were you able to see the private parts of Benito? Did you see him undress?
 

 [G.W.]: Yes.
 

 [State]: And did he ever do anything to you with his private part?
 

 [G.W.]: Yes.
 

 [State]: Okay, what did he do?
 

 [G.W.]: Got on top of me.
 

 [State]: Did he put his private part in yours?
 

 [G.W.]: Yes.
 

 [Defense Counsel: Objection]
 

 [The Court]: ... Sustained.
 

 [State]: When he got on top of you, can you tell me if it hurt or not?
 

 [G.W.]: Yes.
 

 [State]: And did it last very long?
 

 [G.W.]: Yes.
 

 [State]: Did it hurt the whole time?
 

 [G.W.]: Yes.
 

 ¶ 10. Keeping in mind that this testimony is that of a nine-year-old girl, we find that the victim attempted to express herself to the best of her ability. Furthermore, her testimony is corroborated by the medical evidence provided by the examining nurse practitioner. The tears in G.W.’s hymen indicated trauma, which was consistent with G.W.’s recount of what had happened. This Court has held that “any penetration of the labia, no matter how slight, is sufficient to establish the element of ‘sexual penetration’ in a rape case.”
 
 Pryer v. State,
 
 958 So.2d 818, 823(¶ 13) (Miss.Ct.App.2007) (quoting
 
 McGee v. Cuna Mutual Ins. Society,
 
 452 So.2d 438, 440-41 (Miss.1984)). “The same standard may also be applied to sexual battery.”
 
 Id.
 

 ¶ 11. We find that Ruiz’s admission, and the testimonies of G.W. and the examining nurse practitioner were sufficient to support the contention that Ruiz’s actions resulted in sexual penetration. While examining G.W., White found tears in G.W.’s hymen, which would have required, at a minimum, some penetration of the labia; therefore, the essential element of sexual penetration required in a sexual battery case was met. In addition, Ruiz admitted to rubbing his penis against G.W.’s private parts, and G.W. testified that he “hunched her.” Upon careful review of the record,
 
 *314
 
 we find it was certainly possible for reasonable, fair-minded jurors to have found Ruiz guilty.
 

 ¶ 12. With regard to Ruiz’s complaint that conflicts existed in the recounts offered by G.W. and Ruiz of what happened on the night in question, “[jjurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear.”
 
 Givens v. State,
 
 967 So.2d 1, 7(¶ 19) (Miss.2007) (citation omitted). The jurors in this case had the opportunity to review the evidence and testimonies presented at trial, and they then had the responsibility of determining the amount of weight to give to the evidence and witnesses in making their decision. As a result, the jury acted properly in their deliberations, and we find that Ruiz’s assignment of error is without merit.
 

 II. Weight of the Evidence
 

 ¶ 13. Ruiz also alleges that the verdict was against the overwhelming weight of the evidence and that the circuit court erred in denying his motion for a new trial. He contends that it was not possible for a reasonable jury to have found there was penetration beyond a reasonable doubt. The supreme court has held the following with regard to an appeal which involves a claim that a verdict is against the overwhelming weight of the evidence:
 

 In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.
 

 Boone v. State,
 
 973 So.2d 237, 243 (¶¶ 20-21) (Miss.2008) (quoting
 
 Herring v. State,
 
 691 So.2d 948, 957 (Miss.1997)).
 

 ¶ 14. We do not find that the circuit court abused its discretion in failing to grant a new trial. The jury found sufficient evidence that penetration had occurred to support a conviction of sexual battery. Their findings were based on the medical evidence presented, an admission by the defendant, and the testimonies of the victim and the examining nurse practitioner. Therefore, we do not find that the verdict was against the overwhelming weight of the evidence. This issue is without merit.
 

 ¶ 15. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO REGISTER AS A SEX OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ, IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . The Court of Appeals declines to identify sexual battery victims. In the interest of the child's privacy, the minor's name, as well as the names of family members, have been replaced with initials.