ISHEE, J.,
 

 for the Court.
 

 ¶ 1. Melvin Alesich was convicted in the Harrison County Circuit Court of burglary of a dwelling. He was sentenced to twenty-five years as a habitual offender in the custody of the Mississippi Department of Corrections without eligibility for parole or probation. Aggrieved, Alesich appeals asserting that jury instruction S-l improperly amended the indictment and that the jury’s verdict was against the overwhelming weight of the evidence. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Eva Stephens and Alesich first met at a local water slide in Gulfport, Missis
 
 *1082
 
 sippi. They spoke briefly, and Alesich asked Stephens for her telephone number, which she gave him. Their second meeting occurred when she invited him to accompany her to a friend’s house. Alesich and Stephens spoke on the phone thereafter, and she invited him to join her at a neighbor’s barbeque. Their fourth and final meeting occurred when Alesich
 
 appeared
 
 at Stephens’s home unannounced one evening as she was preparing to go to a friend’s house, and she invited him to go with her. At the end of the evening, they returned to Stephens’s home, and she told him that she did not wish to see him anymore. Alesich said he was okay with her decision, and that was the last time they spoke. However, Alesich subsequently wrote two notes and left them for Stephens to find. She found the first note stuck on her mailbox that read, “Eva, I love you forever.” The second note had been left on her car and said, “I love you, Melvin.”
 

 ¶ 3. According to Stephens, on August 19, 1996, at approximately 4:00 a.m., she was asleep in the bed with her two-year-old daughter when she awoke to find Ale-sich climbing through her bedroom window. Stephens and her daughter began to scream, and he jumped on top of Stephens and tried to quiet her by covering her mouth. Alesich then hit Stephens across her face and climbed back out the window through which he had allegedly entered. Nothing in the house was stolen. Stephens immediately called 911, and she told the dispatcher what had happened, the identity of the intruder, and that he drove a yellow truck.
 

 ¶ 4. Officer Christopher Parrish with the Gulfport Police Department was the first officer to respond. At trial, Officer Parrish testified that when he arrived at Stephens’s home that night, he noticed the area above her left eye was red and was beginning to swell. Officer Parrish searched Stephens’s house and discovered that the window in her bedroom was open and that the screen had been either torn off or pried open. He also found a chair outside that had been placed in front of Stephens’s bedroom window. He attempted to get fingerprints from the inside and outside of the house, but he was unable to do so.
 

 ¶ 5. In the meantime, Officer Lynette Woodard received a dispatch with Alesich’s name and vehicle description. She patrolled the area near Stephens’s house and saw a yellow Ford truck parked on a nearby street. When Officer Woodard called its tag number in to dispatch, she was told that the truck was registered to Alesich. She began inspecting the vehicle, and Ale-sich walked around from behind a house and approached the truck. He identified himself to Officer Woodard as “Melvin Ale-sich,” and she placed him in handcuffs. As she was doing so, Alesich told her that “he was just trying to get Miss Eve’s [sic] attention.” Officer Woodard drove Alesich to Stephens’s house, and Stephens identified him as the intruder.
 

 ¶ 6. Detective Claud Guinn with the Gulfport Police Department testified that he also responded to Stephens’s call. When he arrived at the scene, he spoke with Stephens and observed that her left eye was bruised and swelling. Detective Guinn then went to the police station to speak with Alesich, but Alesich did not wish to give a statement. Alesich was processed and placed in the adult detention facility. On May 5, 1997, a jury found Alesich guilty of burglary of a dwelling. He was sentenced as a habitual offender to twenty-five years in the custody of the Mississippi Department of Corrections without eligibility for parole or probation.
 

 ¶ 7. Alesich filed a pro se motion for an out-of-time appeal, and it was reviewed by
 
 *1083
 
 a panel of justices from the Mississippi Supreme Court. The circuit court had previously found that Alesich’s counsel had filed a post-trial motion on May 29, 1997. However, his attorney never set the motion for a hearing; no order had been entered disposing of the motion; and no order had been entered allowing his attorney to withdraw as counsel. In an order ruling on Alesich’s motion for an out-of-time appeal, the supreme court noted that the time for filing a notice of appeal does not begin running until the circuit court ruled on his post-trial motion. Therefore, the supreme court found that Alesich’s motion for an out-of-time appeal was filed prematurely, and the court dismissed the motion without prejudice. Following entry of the supreme court’s order, the circuit court entered an order on April 21, 2008, denying Alesich’s motion for a new trial. He then timely filed the present appeal.
 

 DISCUSSION
 

 I. Whether jury instruction S-l improperly amended the indictment for burglary.
 

 ¶ 8. Alesich first complains that jury instruction S-l was an indirect amendment to the indictment. He contends that the alleged amendment “was substantive in nature, materially changed an element of the original offense [with which he was] charged, materially altered his defense to the indictment, and was reversible error as it circumvented the authority of the grand jury.”
 

 ¶ 9. The purpose of an indictment is to put a defendant on notice of the charges against him so that he is able to prepare an adequate defense.
 
 Evans v. State,
 
 916 So.2d 550, 551(¶ 5) (Miss.Ct.App.2005). “All that is required is that the indictment provide ‘a concise and clear statement of the elements of the crimes charged.’ ”
 
 Id.
 
 at 551-52(¶ 5) (quoting
 
 Williams v. State,
 
 445 So.2d 798, 804 (Miss.1984)). It is well established that courts may amend indictments to correct defects of form, but only the grand jury may correct defects of substance.
 
 Jones v. State,
 
 912 So.2d 973, 976(¶ 9) (Miss.2005). In
 
 Wilson v. State,
 
 935 So.2d 945, 949(¶ 12) (Miss.2006) (citing
 
 Swington v. State,
 
 742 So.2d 1106, 1118(¶ 44) (Miss.1999)), the supreme court stated:
 

 The test of whether an accused is prejudiced by the amendment of an indictment or information has been said to be whether or not a defense under the indictment or information as it originally stood would be equally available after the amendment is made and whether or not any evidence the accused might have would be equally applicable to the indictment or information in the one form as in the other; if the answer is in the affirmative, the amendment is one of form and not of substance.
 

 ¶ 10. In the present case, the indictment provided that Alesich, “on or about August 10, 1996, did unlawfully, wilfully, feloniously and burglariously break and enter the dwelling house of Eva Stephens ... with the intent to steal personal property therein.... ” In contrast, when jury instruction S-l was given, it stated that Alesich had been “charged by an indictment with the offense of [b]urglary by breaking and entering the dwelling house of Eva Stephens with the intent to commit a crime once inside.” Alesich argues that this jury instruction forced him to alter his defense strategy. He alleges that he had originally planned to prove that he was not guilty of burglary by showing that he had not intended to steal any personal property from Stephens’s house. Instead, at trial, jury instruction S-l required him to prove that he had not intended to commit a crime inside Stephens’s house.
 

 
 *1084
 
 ¶ 11. “An instruction which fails to instruct the jury in language that tracks the indictment does not necessarily render it fatally defective.”
 
 McDonald v. State, 881
 
 So.2d 895, 905(1147) (Miss.Ct.App.2004). In order to determine if a jury was properly instructed, this Court must read all of the jury instructions that were given together as a whole.
 
 Goodin v. State,
 
 977 So.2d 338, 340(¶ 10) (Miss.2008) (citation omitted). In this case, jury instruction S-1 was only one of the several instructions that were given. Jury instruction S-5 further provided that “if there is a breaking and entering a dwelling at night, accompanied by flight when discovered, an inference may be made that the object of the breaking and entering was theft, even though nothing was taken.”
 

 ¶ 12. Alesich was indicted for burglary of a dwelling under Mississippi Code Annotated section 97-17-23 (Supp.1996). The statute describes burglary as “breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein....” Miss.Code Ann. § 97-17-23.
 

 ¶ 13. Burglary consists of two essential elements: (1) unlawfully breaking and entering, and (2) having the intent to commit a crime once inside.
 
 Winston v. State,
 
 479 So.2d 1093, 1095 (Miss.1985). Theft, as described by jury instruction S-5, is a crime. Therefore, we find that the indictment properly notified the defense of the crime with which Alesich was charged, and that the jury was properly instructed.
 

 ¶ 14. Furthermore, even if jury instruction S-l could be considered an amendment to the indictment, it was one of form and not of substance. Alesich neither testified nor called any witnesses in his defense. The only measure of what his defense theory was occurred during opening statements when his attorney told the jury the following:
 

 [Alesich] would not, I guess take [Eva’s] subtle hints to leave her alone. He kept wanting to have a relationship in the sense that he would try to talk to her. And the only way that I guess the evidence is going to show what we’re going to try to show is that there was only one way to get rid of him, and that was to charge him with a crime. It’s not a fatal attraction, but it’s an attraction that got him arrested.
 

 You’re going to see, or not see I should say, that there were no fingerprints found in the house. There were no footprints found in the house. There were no signs that anyone came in the house other than the testimony of Eva.
 

 From this, it appears that Alesich’s defenses were that he did not break into Eva’s house that night to commit a crime or for any other reason, and that Eva fabricated the claim so that he would be charged with a crime and, therefore, leave her alone.
 

 ¶ 15. Alesich’s defenses — that he did not break into Eva’s house that night and that Eva framed him — were equally available to him whether he was charged with breaking and entering Eva’s house with the intent to steal personal property, as stated in the indictment, or with the intent to commit some unspecified crime therein, as stated in jury instruction S-l. It follows that Alesich’s defenses were not prejudiced by the language of jury instruction S-l. Accordingly, even if jury instruction S-l could be considered an amendment to the indictment, it was one of form rather than substance. We find that this issue is without merit.
 

 II. Whether the jury’s verdict was against the overwhelming weight of the evidence.
 

 
 *1085
 
 ¶ 16. Alesich also complains that the circuit court erred in denying his motion for a new trial because the verdict was against the overwhelming weight of the evidence. In determining whether a jury’s verdict was against the overwhelming weight of the evidence, “this Court must accept as true the evidence which supports the verdict and will reverse that verdict only when it is determined that the circuit court has abused its discretion in failing to grant a new trial.”
 
 Smith v. State,
 
 904 So.2d 1217, 1221(¶ 12) (Miss.Ct.App.2004).
 

 ¶ 17. Alesich alleges that the opening in the window screen was too small for a person to fit through; however, the jury was shown photographs of the window at trial, and they determined that Alesich had been able to climb through the opening. It has long been the rule that the jury has “the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed.”
 
 Ford v. State,
 
 737 So.2d 424, 425(¶ 8) (Miss.Ct.App.1999). As such, “[t]his Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible.”
 
 Hodges v. State,
 
 906 So.2d 23, 26(¶ 11) (Miss.Ct.App.2004) (citation omitted). Therefore, we accept the jury’s findings that the window opening was large enough for Alesich to have climbed through it.
 

 ¶ 18. Alesich further argues that the only evidence of his being inside Stephens’s house that night is Stephens’s testimony. He points to the fact that the “alleged assailant did not take any money or property” from Stephens and that Officer Parrish was unable to lift fingerprints from Stephens’s house. However, upon considering the other evidence, this argument also fails. First, two police officers testified that Stephens’s face was bruised and swollen when they arrived at her house that night. Second, the officers found a chair outside that had been placed in front of the window through which Ale-sich had allegedly climbed. Third, the screen, which Stephens testified had been nailed on, looked as though it had been torn off or pried open. Finally, Alesich had been found near Stephens’s home, and as he was being arrested, he told Officer Woodard that “he was just trying to get Miss Eve’s [sic] attention.” Each of the foregoing supports the jury’s guilty verdict. Therefore, we find that the jury’s verdict was not against the overwhelming weight of the evidence. This issue is also without merit.
 

 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.